# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case No.: |
| v. : | Magistrate No.: 24-mj-124 |
| **MATTHEW MATULICH,** : | 18 U.S.C. § 641 |
| **Defendant.** : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Matthew Matulich, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. The Defendant, Matthew Matulich, was among those who unlawfully entered the U.S. Capitol on January 6, 2021. Matulich traveled to Washington, D.C. from his home in Louisiana with the purpose of attending the "Stop the Steal" rally to be held on January 6, 2021.

9. On the morning of January 6, Matulich attended the "Stop the Steal" rally at the Ellipse. He then proceeded toward to U.S. Capitol from the rally.

10. At approximately 2:13 p.m., rioters broke windows next to the Senate Wing Door, entered the Capitol building, and broken open the Senate Wing Door from inside the building.

Approximately two minutes later, at 2:15 p.m., Matulich entered the building through the Senate Wing Door.

11. Matulich spent at least 40 minutes inside the Capitol Building, and remained on Capitol grounds until approximately 5:30 p.m. that evening.

12. While Matulich was inside the building, he stole a United States flag and flagpole from one of the hallways on the Senate side of the building. He proceeded to enter the Senate gallery and wave the flag as other rioters accessed the Senate floor.

13. Matulich took the stolen U.S. flag and flagpole with him when he exited the building. He brought them home with him to Louisiana.

### *Elements of the Offense*

14. The parties agree that Theft of Government Property in violation of 18 U.S.C. § 641 requires the following elements:

   a. First, the defendant knowingly stole, took, embezzled, purloined, or converted to his own use a stolen item.

   b. Second, the stolen item was property of some value belonging to the United States or any of its departments or agencies.

   c. Third, the defendant intended to deprive, without right, the United States government of the use or benefit of the stolen items.

15. The parties agree that Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1) requires the following elements:

   a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

   b. Second, the defendant did so knowingly.

*Defendant's Acknowledgments*

16. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly stole and converted to his personal use a United States flag and flagpole belonging to the Sergeant at Arms of the United States Senate. The defendant and the government agree that these items are collectively valued at less than $1,000.

17. The defendant further admits that he knowingly and without authority to do so entered and remained in a restricted building, specifically the United States Capitol, where the Vice President was temporarily visiting.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Monika (Isia) Jasiewicz*
Monika (Isia) Jasiewicz
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Matthew Matulich, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/3/24

_____
Matthew Matulich
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 06-03-2024

_____
Dane Ciolino
Attorney for Defendant